```
 1                IN THE UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF ILLINOIS
 2                           EASTERN DIVISION
     ---------------------------------------------------------------
 3    BRYAN STEWART,                      ) Case No. 23 C 50198
                                          )
 4               Plaintiff,               )
                                          )
 5         v.                             )
                                          )
 6    C/O MICHAEL JOHNSON, et al.,        ) Chicago, Illinois
                                          ) December 18, 2024
 7               Defendants.              ) 9:24 a.m.
     ---------------------------------------------------------------
 8             EXCERPT OF TRANSCRIPT OF MOTION HEARING
              BEFORE THE HONORABLE REBECCA R. PALLMEYER
 9   ---------------------------------------------------------------

10   APPEARANCES:

11
     For Plaintiff:          GREGORY E. KULIS AND ASSOCIATES, LTD.
12                           BY:  BRIAN OROZCO
                             134 North LaSalle Street, Suite 444
13                           Chicago, IL 60602

14
     For IDOC:               ILLINOIS ATTORNEY GENERAL'S OFFICE
15                           BY:  MANASSEH KONADU
                             115 South LaSalle Street, 28th Floor
16                           Chicago, IL 60603

17
     For Wexford:            CASSIDAY SCHADE LLP
18   (Telephonically)        BY: STEPHEN JOSEPH GORSKI
                             973 Featherstone Road, Suite 125
19                           Rockford, IL 61107

20
     Also Present:           GWENDOLYN DRAKE, IDOC, In-House Counsel
21

22   Court Reporter:         Hannah Jagler, RMR, CRR, FCRR
                             Official Court Reporter
23                           219 S. Dearborn St., Room 2504
                             Chicago, Illinois 60604
24                                   *   *   *   *   *
25                Proceedings reported by stenotype;
         Transcript produced used computer-aided transcription
```

|    |                                                                                  |
|----|----------------------------------------------------------------------------------|
| 1  | **TRANSCRIPT OF PROCEEDINGS**                                                    |
| 2  | (Proceedings commenced in person at 9:24 a.m.)                                   |
| 3  | THE COURTROOM DEPUTY: The United States District                                 |
| 4  | Court for the Northern District of Illinois is now in session,                   |
| 5  | the Honorable Rebecca R. Pallmeyer presiding. Calling                            |
| 6  | 23-cv-50298, Stewart v. Johnson, et al., for motion hearing.                     |
| 7  | Please be seated.                                                                |
| 8  | MR. OROZCO: Good morning, Your Honor. Attorney Brian                             |
| 9  | Orozco on behalf of Plaintiff.                                                   |
| 10 | THE COURT: Good morning.                                                         |
| 11 | MR. KONADU: Good morning, Your Honor. Manasseh                                   |
| 12 | Konadu on behalf of Dixon and IDOC, accompanied with IDOC                        |
| 13 | in-house counsel Ms. Gwendolyn Drake.                                            |
| 14 | THE COURT: Good morning. Go ahead.                                               |
| 15 | MR. GORSKI: Sorry. Good morning, Your Honor. This                                |
| 16 | is Stephen Gorski on behalf of Defendants Dr. Mirella Susjnar                    |
| 17 | and Susan Rick.                                                                  |
| 18 | THE COURT: Good morning, Mr. Gorski.                                             |
| 19 | We're here on a motion for sanctions filed by                                    |
| 20 | Plaintiff with respect to the IDOC defendants. Before I hear                     |
| 21 | from the lawyers who are on this motion, is there anything that                  |
| 22 | you want to inject on this issue?                                                |
| 23 | MR. GORSKI: No, Your Honor. I don't have a dog in                                |
| 24 | this fight. I'm just observing, I guess.                                         |
| 25 | THE COURT: All right. Well, let me begin by saying                               |

1  I've read the plaintiff's motion and the response.  This is not
2  a good look for IDOC.  It's apparent that these -- that this
3  discovery response, which was fairly requested and repeatedly
4  requested, would never have been honored had it not been for
5  Plaintiff's continued efforts.
6          Instead, it sounds like the lawyers would simply have
7  accepted the representations made by IDOC staff that nothing
8  exists, as between a plaintiff who says, "I made these calls, I
9  filed these -- I sent these e-mails, I can give you
10 approximately when," on the one hand, an administrator who
11 says, "Well, we can't find something" on the other.  Why would
12 we honor the person who has less to be concerned about than the
13 individual who is specific and determined?  It's just really
14 troubling that this material took months and months to surface
15 and only did because of additional diligence on the part of
16 counsel, who should not have had to go through it.  So I'd like
17 to hear from IDOC on this.
18         MR. KONADU:  Well, Your Honor, our position is the
19 staff over IDOC were diligent in what they were trying to do.
20 I don't know if Your Honor knows this, but the system that is
21 used to track all the calls is a third-party system that IDOC
22 is still learning how to use.  During the original subpoena
23 that was sent by Mr. Orozco, when IDOC staff went to look for
24 it, they did their due diligence.  They tried to make sure that
25 they were looking for the right timeframe.  They even had

1     multiple conversations with Mr. Orozco and searched to see what
2     they could find.  When they made the initial inquiry, the
3     system did not find anything.
4           After speaking to multiple IDOC staff, they've had
5     situations like that before where they've searched up specific
6     timeframes and at times, nothing would show up.  They'd have to
7     go later, and then they'd search and make sure that -- they'd
8     search and at that time something would show up.
9           So, Your Honor, in this instance, we believe that it
10    was just an error that was more so computer and clerical,
11    rather than deceit or trying to make sure that Plaintiff didn't
12    get the calls that were there.
13          THE COURT:  Okay.  Well, I will assume there was
14    nothing intentional about this.  Let me just ask based on your
15    representation that this happens from time to time, that things
16    don't show up, does that mean that every plaintiff who requests
17    documents or material from IDOC should make -- should request,
18    say, "Please run the search three times"?  No reasonable lawyer
19    will make that request and no reasonable defense attorney would
20    say, "Okay," because you would say, "That's really burdensome
21    for my client to have to make three -- to search three times
22    for material."
23          If there's a third party who's providing documents in
24    a way that they can't be searched or found, you've got a
25    problem with your third party.  It's not Plaintiff's problem to

1  tell you that -- to tell you that your vendor has -- is
2  providing a product and it's useless to them.
3        This is discovery abuse, and I will tell you that it
4  undermines my faith.  We have so many cases filed by detainees
5  and inmates who say things like, "I filed a grievance, I
6  submitted report, I complained to this person or that person,"
7  only to get the response from the defendant, "We don't have any
8  record of it."
9        And, you know, a lot of times, I believe that.  I
10 think, "Well, you know, the prisoner is just making this up."
11 I'm discovering now that in fact, when IDOC says something
12 doesn't exist, we don't know that that's true.  What we know is
13 that one search didn't turn it up or maybe two searches didn't
14 turn it up, but it's there somewhere, and the search mechanism
15 is just ineffective.  This is so troubling to me.
16       I want to hear from Plaintiff on this.
17       MR. OROZCO:  I mean, just to piggyback, we are just as
18 frustrated, Your Honor, especially my client.  This goes well
19 beyond a clerical error.
20       Juana Lopez is the IDOC individual responsible for not
21 only retaining calls but producing them responsive to
22 subpoenas.  Okay?  We sent an initial subpoena in early June
23 and we had the wrong dates.  I admit that.  March 18th, 2023,
24 to April 23rd, 2021.  Calls were produced in response from
25 August 30th, 2021, to February 30th, 2023.

1            What's even more troubling, which is tangential, but
2    it goes along with this whole issue of IDOC's retention of
3    records in general, is that they gave me the calls of every
4    single inmate, whoever made a PREA call, during that timeframe.
5    Not just our client.  Everyone, IDOC systemwide.
6            In response, we had multiple e-mails with people from
7    IDOC.  We sent a subpoena at 11:46 a.m. that specifically asked
8    for April 1st, 2021, to April 30th, 2021.  Juana Lopez, the
9    individual responsible -- it's not even the legal coordinator,
10   it's not even like a person down the list of people who are
11   depending on other people to give them stuff.  This is the
12   primary person responsible for these calls -- responded at
13   1:17 p.m. that no calls existed.
14           June 25th, the next day, Lora Haven -- I don't know
15   what her exact position or title is, but she must have some
16   authority since she responded to our repeated e-mails, "Are you
17   guys sure?  Are you guys sure?  Are you guys sure?" -- also
18   said there were no records.
19           I sent a subsequent subpoena for all their e-mails,
20   which took forever to get, which will be the basis of my next
21   motion.  And we had e-mails that specifically summarized that
22   my client made a call on April 15th, 2021.  A call was made by
23   B. Stewart April 15th, 2021, on the PREA hotline.  I sent an
24   October 8th subpoena from 2024, and I had million requests.
25   Admittedly, two of the requests, one of the dates was an error,

1  but we asked -- we attached the e-mails that referenced the
2  call on April 15th. "I want that call. I want that call."
3  And then the third request, "I want all PREA calls." I just
4  repeated my request.
5       They blew me off. I sent multiple e-mails to all the
6  counsel here, including Juana Lopez, including Lora Haven. I
7  just included everybody. "Where's my response to my subpoena?
8  Where's my response to my subpoena?" I took them at their word
9  that this call didn't exist, but there were other documents
10 responsive to my request.
11      I had to get on the phone in early December with Juana
12 herself and ask, "Where are my calls?" "Oh, I look at the
13 number on the writer, the range. Well, my writer referenced
14 this particular call." She's like, "Look, let me just look
15 through the system and I'll get back to you in 30 minutes."
16      And lo and behold, I got a call from April 15th for my
17 client, referenced in the previous e-mail that was responsive
18 to my subpoena in June. And the prejudice to us, outside of
19 this, in my settlement discussions, counsels for IDOC keep
20 telling me, "There's no objective evidence, there's no
21 objective evidence that she called rape. None." And then used
22 that against me in my settlement positions.
23      Had I not done -- had I not sent three subpoenas,
24 called IDOC employees, which should be the job of whoever's
25 handling these subpoenas to figure out what was going on, I

1 would be in a worse settlement position than now for my
2 settlement conference on February 7th before Your Honor.
3 　　　　We are prejudiced. This is ridiculous. I at least
4 want my fees to try to get to the bottom of this.
5 　　　　THE COURT: Anything further from the defendants?
6 　　　　MR. KONADU: Yes, Your Honor. If I can just speak to
7 all that Plaintiff said, we definitely understand his
8 positions. And I just want to make it clear to the Court that
9 at all times, IDOC staff got on the phone with Plaintiff
10 whenever he made a call. There was never any attempts to try
11 to not answer his call or not to work alongside with him.
12 　　　　As you heard counsel mention, during the initial
13 period, there was a bevy of calls that were produced to
14 Plaintiff. They were not necessarily en pointe, but as
15 Plaintiff continued to work with IDOC staff, they were able to
16 locate the specific call that he needed and were eventually
17 able to provide.
18 　　　　And another thing just to make clear to Your Honor is
19 this counsel is wearing two hats, one for the individual
20 defendants for this case, and the second hat as -- is to
21 represent IDOC and Dixon on these subpoena matters. So when
22 counsel makes mention that I'm on these e-mails, at that time,
23 I'm on as a courtesy, as a part -- as counsel for party of the
24 case, not necessarily as representing these subpoena matters
25 and making sure that they can be done.

1  THE COURT: I understand that. But in whatever role
2  you're playing, the existence of these messages would be
3  relevant to your clients as well, on -- for either set of
4  clients.
5  MR. KONADU: Correct, Your Honor.
6  THE COURT: So the fact that Plaintiff's counsel is
7  saying, "Where is this stuff?" and nothing's being produced
8  should be of concern to you in your role as the attorney for
9  the defendants as well.
10  I'm not suggesting -- I don't think anybody's
11  suggesting that IDOC staff refused to answer Mr. Orozco's
12  calls. If you just take something as simple as, the subpoena
13  that was issued on June 24 identifying a really limited time
14  period and requesting calls only by the plaintiff herself and
15  that was ignored for months and months, that by itself, with
16  all -- without all the other information I've just heard from
17  Plaintiff's counsel or from the client, that by itself is
18  enough to say, IDOC's response to legitimate discovery and a
19  subpoena is unacceptable.
20  I do have to award the fees for preparation of this
21  motion. We can talk about what other sanctions will be
22  appropriate, but those will be awarded and I'll ask for your
23  fee petition.
24  I'm confident, or I hope, I will say, that IDOC
25  recognizes that whatever its recordkeeping mechanism is,

1  whatever third party it's using, whatever staff is responsible
2  for hunting for this or that, whatever titles people have like
3  head of intelligence, supervisor of legal services, et cetera,
4  it is the responsibility of the responding party to take a
5  request seriously and make a diligent appropriate search.  And
6  maybe it's time for the IDOC to reconsider the way it maintains
7  these records if there are things that just can't be found in
8  initial search.
9        Again, I'm troubled about this case.  This plaintiff
10 has a diligent, hardworking attorney.  So many individuals in
11 custody have nothing of the sort.  They're either pro se or
12 their lawyers are unable to pursue the issues because they
13 don't have the resources or their lawyers just don't realize
14 that they have to press and press and press to get things out
15 of the other side.
16       And I and my colleagues are in the position of then
17 believing that material that might be very relevant and
18 supportive of a plaintiff's claim simply doesn't exist.  I
19 don't want to see that happen.  I want, when I reach a decision
20 in this case, to do so knowing that I have all the relevant
21 information before me, and that means discovery process has to
22 work effectively.  And it didn't in this case.
23       Motion's granted.
24       We have a status set in February, or we have
25 conference --

1   MR. OROZCO:  Your Honor, I'm so sorry.  We have two
2 other pending motions.
3   THE COURT:  Proceed.
4   MR. OROZCO:  The second -- okay.  So the second
5 motion --
6   THE COURT:  The other two motions are against Dixon;
7 correct?
8   MR. OROZCO:  Correct.  All three are against Dixon.
9   THE COURT:  Well, one is just against IDOC, but go
10 ahead.
11   MR. OROZCO:  Okay.  This is Docket Entry Number 79.
12   (Requested portion ends.)
13
14
15          o o o o o o o o o o o

**COURT REPORTER'S CERTIFICATE**

17   I certify that the foregoing is a correct transcript
18 from the record of proceedings in the above-entitled matter.

19   Dated this 19th day of December, 2024

20
21   /s/ Hannah Jagler
   _____

22   Hannah Jagler, RMR, CRR, FCRR
         Official Court Reporter
23
24
25